IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| William Blagogee, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:10-cv-13(GBL-IDD) |
| | ) |
| Equity Trustees, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

<u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court on Defendant Equity Trustees, LLC's Motion to Dismiss Amended Complaint. (Dkt. No. 37.) This case concerns Plaintiffs William Blagogee's and Florence Blagogee's allegations that Equity Trustees, LLC ("Equity"), in addition to violating the Fair Debt Collection Practices Act (the "FDCPA"), committed numerous violations of tort and contract law while attempting to institute a non-judicial foreclosure proceeding against them. There are four issues before the Court. The first issue is whether the doctrine of res judicata bars the Blagogees from bringing their FDCPA and defamation claims, following the filing and adjudication of a related state action in the Fairfax County Circuit Court. The second issue is whether the Blagogees sufficiently allege facts which show that Equity is a debt collector within the meaning of the FDCPA, such that Equity

1

violated the FDCPA by instituting a foreclosure action without advising the Blagogees of their right to dispute the debt or their opportunity to request verification of the debt. The third issue is whether the Blagogees sufficiently allege facts which show that Equity's act of posting notice of the Blagogees' foreclosure sale in the Washington Post amounts to defamation. The fourth issue is whether the Blagogees sufficiently allege facts which show they are entitled to declaratory relief as to the FDCPA and defamation claims.

As an initial matter, the Court grants Equity's Motion to Dismiss Amended Complaint as to Counts I, II, IV, V, VII, VIII, and IX, because the express language of the Blagogees' allegations in those Counts are directed at Defendant Wilshire Credit Corporation ("Wilshire"), and do not, therefore, apply to Equity. The Court concludes that res judicata does not bar the FDCPA or defamation claims because sufficient identity does not exist between those claims and the claims filed by the Blagogees in the Fairfax County Circuit Court. Nonetheless, the Court grants Equity's Motion as to the FDCPA claim because the Blagogees fail to create a reasonable inference that Equity is a debt collector within the meaning of the FDCPA or has engaged in debt collection, in violation of the FDCPA. The Court also grants Equity's Motion as to the defamation claim because the Amended Complaint fails to set forth sufficient facts to suggest

that Equity's publication of the foreclosure sale notice in the Washington Post is an actionable statement. Finally, the Court grants Equity's Motion as to the Blagogees' request for declaratory judgment because such relief is untimely.

## I. BACKGROUND

Plaintiffs are Mr. and Mrs. William Blagogee, who borrowed $362,400 from Fremont Investment and Loan on March 11, 2005. (Def.'s Mem. Supp. Mot. Dismiss Ex. A.) [hereinafter Def.'s Mem.] To secure the debt, the Blagogees executed a promissory note and a deed of trust, the latter encumbering real property in Alexandria, Virginia. (Am. Compl. Ex. 2.) Defendant Wilshire, though not a party to this instant Motion, was the mortgage servicer for the Blagogees' debt, and the holder of the promissory note and deed of trust. (Am. Compl. ¶ 9.) Defendant Equity was hired by Wilshire to serve as a substitute trustee over the note and deed of trust for the purpose of initiating non-judicial foreclosure proceedings against the Blagogees. (Def.'s Mem. Ex. A.)

Although the precise reason is disputed, at some point in late 2007, the Blagogees stopped making monthly mortgage payments on their obligation. (Am. Compl. ¶ 17.) Wilshire determined that the Blagogees were in default and appointed

Equity to enforce the default, acceleration, and foreclosure sale terms of the deed of trust. (Def.'s Mem. 3.)

On June 15, 2008, Equity sent a letter to the Blagogees advising them that the promissory note could not be located. (Def.'s Mem. Ex. B.) The letter further advised that if the Blagogees believed they might be "subject to a claim by a Noteholder" other than Equity, the Blagogees could file a petition in Fairfax County Circuit Court "for the entry of an Order requiring the secured party to provide adequate protection on your behalf against any such claim." (Def.'s Mem. Ex. B.)

Heeding Equity's advice, the Blagogees filed a petition for the protection of subordinate and collateral interest holders in the Fairfax County Circuit Court on July 1, 2008 (the "First Case"). (Def.'s Mem. Ex. B.) In their petition, the Blagogees alleged that both Equity and Wilshire were not authorized to foreclose upon their property because the promissory note could not be located.[1] (Def.'s Mem. Ex. A.) The Blagogees did not seek an adjudication of their rights or allege any claims as to Equity's liabilities. (Def.'s Mem. Ex. B.) Rather, they alleged that because the promissory note had been lost, Wilshire and Equity lacked authority to enforce its terms. (Def.'s Mem. Ex. B.) However, because the Blagogees failed to obtain proper service within one year of filing, the First Case was dismissed

---
[1] The promissory note has since been located and produced by Equity in the present action.

4

with prejudice by the Fairfax County Circuit Court on October 30, 2009. (Def.'s Mem. Ex. C.)

On November 1, 2009, the Blagogees received a second letter from Equity entitled "RE: NOTICE OF DEFAULT, ACCELERATION & FORECLOSURE SALE," apprising them of default, acceleration and foreclosure (the "Notice Letter"). (Def.'s Mem. Ex. D.) Although the Notice Letter contained a header stating, "This Communication is from a Debt Collector," neither the form nor substance made a demand for payment, provided an address where a curative payment should be sent, or stated how the Blagogees might halt the foreclosure process. (Def's Mem. Ex. D.) Rather, the Notice Letter informed the Blagogees that Equity had scheduled a foreclosure sale to take place on November 10, 2009. (Am. Compl. ¶ 50.)

Shortly thereafter, Equity advertised the foreclosure sale in the Washington Post. (Am. Compl. ¶ 52.) The Blagogees then filed this suit on November 2, 2009, in the Fairfax County Circuit Court (the "Second Case"). (Am. Compl. 1). In their Amended Complaint, the Blagogees allege the following Counts: I (violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* (2007)); II (negligent servicing, accounting, and credit reporting); III (violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (2000)); IV (breach of contract and the covenant of good faith

and fair dealing); V (negligence); VI (defamation); VII (civil liability for negligent noncompliance of credit); VIII (conversion); IX (unjust enrichment); and X (declaratory judgment). (Am. Compl. ¶¶ 13-104.) Upon Equity and Wilshire's signed notice of removal pursuant to 28 U.S.C. § 1441 and § 1446, the Blagogees' action was removed to this Court. Defendant Equity now moves the Court to dismiss all Counts of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); see FED. R. CIV. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555.

In order to survive a Rule 12(b)(6) motion to dismiss a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 556.

In considering a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the Plaintiffs' claim is and the grounds upon which it rests," the Plaintiffs' legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Twombly*, 550 U.S. at 556 n.3.

### III. ANALYSIS

A. Res Judicata

Equity's Motion to Dismiss the Amended Complaint on the grounds of res judicata is denied because the claims in this case arose from facts that occurred subsequent to the Fairfax County Circuit Court's dismissal of the Blagogees' original Complaint, which was based upon facts which preceded filing of

the First Case. Because Equity has failed to demonstrate identity of the causes of action, res judicata does not apply to preclude this lawsuit. Res judicata "literally means a 'matter adjudged,' and [] precludes relitigation of a claim or issue once a final determination *on the merits* has been reached by a court of competent jurisdiction." *Highsmith v. Commonwealth*, 489 S.E.2d 239, 241 (Va. Ct. App. 1997) (quoting *Commonwealth ex rel. Gray v. Johnson*, 376 S.E.2d 787, 788 (Va. 1989)) (emphasis added). The application of res judicata requires satisfaction of three elements: (1) a final judgment on the merits in an earlier suit; (2) an identity of the claims in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981).

### i. Final Judgment on the Merits

The Fairfax County Circuit Court's dismissal of the First Case was a final judgment on the merits because the dismissal was based on insufficient service of process. A dismissal for failure to serve process is a dismissal with prejudice and generally "conclusive of the rights of parties as [though] the suit had been prosecuted to [a] final disposition adverse to plaintiff . . . ." *Gilbreath v. Brewster*, 463 S.E.2d 836, 837-38 (Va. 1970); *see Highsmith*, 489 S.E.2d at 242 (concluding that

the earlier, related action brought by the Commonwealth was a final judgment on the merits because the Commonwealth failed to serve process within one year).

The Blagogees rely on *Highsmith* for the proposition that the dismissal of the First Case was not intended to be a final judgment because they did not have opportunity to appear before the court and present their arguments. (Pls.' Opp'n Mem. to Def.'s Mot. Dismiss 9.) [hereinafter Pls.' Opp'n.] However, the application of *Highsmith*'s reasoning actually favors Equity. There, the Commonwealth argued that res judicata did not apply to the earlier litigation because the merits of the case were never reached and, thus, there was not a final judgment on the merits. *Highsmith*, 489 S.E.2d at 243. The *Highsmith* court concluded that res judicata applies "if the merits are actually *or constructively* determined." *Id.* at 242. While an actual determination on the merits entails a party's opportunity to present argument and evidence, a constructive determination on the merits implies that a final judgment is rendered in the absence of such an opportunity. *Id.* Therefore, the fact that the Blagogees did not actually present their argument and evidence before the Fairfax County Circuit Court does not prevent the application of res judicata because the merits can be constructively determined to equate a final judgment.

Accordingly, the Court concludes that the dismissal order in the First Case operated as a final judgment on the merits.

ii. Identity of Claims

Sufficient identity does not exist between the Blagogees' First and Second Case claims because the FDCPA and defamation claims arose from Equity's alleged conduct following the First Case's dismissal. The claims of two separately filed suits are identical when they arise out of the same "transaction" or "series of transactions." *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986). The term "'transaction' connotes a natural grouping or common nucleus of operative facts." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999). Although it is "not necessary to ask if the plaintiff knew of his present claim at the time of the prior judgment," res judicata will not bar claims that do not exist at the time of the prior judgment. *Harnett*, 800 F.2d at 1313.

The Blagogees contend that the FDCPA and defamation claims in the Second Case arose from a series of transactions independent of the First Case because the facts prompting them to file the Second Case arose after the dismissal of the First Case. (Pls.' Opp'n 9.) After the dismissal of the First Case on October 30, 2009, the Blagogees received both the Notice

Letter and the foreclosure sale notice. (Am. Compl. ¶¶ 50, 52.) These occurrences amount to a series of transactions different from the First case because the Blagogees could not have had knowledge of these occurrences until after the First Case's dismissal. (Def.'s Mem. Ex. C.) Recognizing the implications of the Notice Letter and the published foreclosure sale notice, the Blagogees then filed the Second Case alleging that Equity violated the FDCPA and defamed them. (Am. Compl. 1.) Thus, the Second Case stems from a series of transactions independent of the First Case because the events giving rise to the FDCPA and defamation claims did not occur until after the First Case was adjudicated. Therefore, sufficient identity does not exist between the claims in the First and Second Cases because each case arose from an independent series of transactions. Accordingly, the Court concludes that res judicata does not bar the Blagogees' FDCPA or defamation claims.

B. FDCPA Claim

Although res judicata does not bar the Blagogees from bringing their FDCPA claim, the Court nonetheless grants Equity's Motion as to that claim because the Blagogees fail to sufficiently allege that Equity is a debt collector within the meaning of the FDCPA. To prevail on an FDCPA claim, plaintiffs must sufficiently allege that (1) they were the object of

collection activity arising from a consumer debt; (2) defendant is a debt collector as defined by the FDCPA; and (3) defendant engaged in an act or omission prohibited by the FDCPA. *Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005) (citing *Fuller v. Becker & Poliakoff*, 192 F. Supp. 2d 1361 (M.D. Fla. 2002)).

As to the first element, the Blagogees sufficiently allege that they were the object of a debt collection activity. Section 1692(a) of the FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for person, family, or household purposes." 15 U.S.C. § 1692(a)(5) (1997). Thus, a plaintiff sufficiently alleges that he is the object of collection activity when he alleges a third party's attempt to collect payment of his personal debts. *See id.* Here, the Blagogees allege that (1) they are debtors on a $362,400 loan (Am. Compl. ¶ 45.); (2) their debt is for personal, family, or household services, as required by the FDCPA (Am. Compl. ¶ 46.); (3) Equity is in the regular business of debt collecting in the state of Virginia (Am. Compl. ¶ 39.); and (4) Equity attempted to collect their personal debt on behalf of Wilshire (Am. Compl. ¶ 41). Accordingly, the

Blagogees have sufficiently alleged that they were the object of collection activity.

As to the second element, the Blagogees fail to sufficiently allege that Equity is a debt collector as defined by the FDCPA because no reasonable inference can be made that Equity attempted to collect their personal debt. A debt collector, as defined by the FDCPA, is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed . . . ." 15 U.S.C. § 1692(a)(6).

Relying on *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 375 (4th Cir. 2006), the Blagogees argue that Equity is a debt collector because it regularly attempts to collect debts indirectly. (Am. Compl. ¶¶ 33 & 44.) Specifically, the Blagogees allege that the Notice Letter was a demand for payment, and thus an attempt to collect a debt. (Am. Compl. ¶ 45.) However, *Wilson* is distinguishable from the instant case. There, the plaintiff borrower sued the defendant law firm and one of its members under the FDCPA after it had initiated foreclosure proceedings in a fiduciary context on the lender's behalf. *Wilson*, 443 F.3d at 375. The defendant sent notices to the plaintiff with the statements "This Communication is From a

Debt Collector," "this is an attempt to collect a debt," and that the debt had been "accelerated." *Id.* at 375-76. The notices also contained specific information about the debt, including "the amount of the debt," the "creditor to whom the debt is owed," the "procedure for validating the debt," and to whom the debt should be paid. *Id.* at 375. Even though the defendant disclaimed its status as a debt collector, the court concluded that the substance of the defendants' notices amounted to an indirect attempt to collect a debt in violation of the FDCPA. *Wilson*, 443 F.3d at 375.

Here, the Blagogees fail to sufficiently allege facts which allow the Court to draw a reasonable inference that Equity attempted to collect a debt. Like the defendants in *Wilson*, Equity sent notices to the Blagogees with the statements "This Communication is From a Debt Collector," "this is an attempt to collect a debt," and that the debt had been "accelerated." However, unlike the plaintiff in *Wilson*, the Blagogees never received an express demand for payment, notice of the person to whom their debt should be paid, or a statement indicating that Equity was attempting to collect a debt. Accordingly, the Court grants Equity's Motion as to the FDCPA claim because the Blagogees fail to sufficiently allege that Equity is a debt collector as defined by the FDCPA.

C. Defamation

The Court grants Equity's Motion to Dismiss the defamation claim because the Blagogees fail to allege sufficient facts showing that Equity's publication was an actionable statement. To state a claim for defamation, plaintiffs must show: "(1) publication by the defendant (2) of an actionable statement with (3) the requisite intent." *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009) (citing *Echtenkamp v. Loudoun County Pub. Schs.*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003)). Under Virginia law, defamation must be pled with particularity. *See Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E. 2d 858, 862 (Va. 2003). Specifically, defamation pleading "requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further, that is, it must purport to give the exact words." *Fuste*, 575 S.E. 2d at 862.

As to the first element, Equity's foreclosure sale notice in the Washington Post amounts to a publication. Under Virginia law, the publication requirement merely requires a defendant to disseminate a statement to a third party when the dissemination would not occur in a privileged context. *Echtenkamp*, 263 F. Supp. 2d at 1061. Equity's act of transmitting the foreclosure sale notice to the Washington Post effected the dissemination of a statement to a third party. Accordingly, Equity's posting of

15

the Blagogees' foreclosure sale notice in the Washington Post satisfied the publication requirement.

However, the foreclosure sale notice is not an actionable statement for defamation purposes because the Blagogees do not establish a reasonable inference that Equity caused harm to their reputation. To be actionable, a statement must not only be false, it must be defamatory. *Skillstorm*, 666 F. Supp. 2d at 619. A plaintiff must sufficiently allege that the statement tends to harm his reputation "as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id*. The Blagogees allege that Equity's publication is actionable because it (1) made them feel odious and appear ridiculous around their friends and colleagues, and at social events (Am. Comp. ¶ 81.) and (2) caused numerous annoying phone calls from companies offering debt counseling services. (Am. Compl. ¶ 53). The Blagogees admit that they stopped paying their mortgage so an action to collect on the mortgage has a grain of truth to it, despite a dispute between the Blagogees and their mortgage company. (Am. Compl. ¶ 17.)

While the Blagogees allege defamation through statements relating to social and emotional embarrassment among friends and neighbors, they plead no facts that allow the Court to infer that they were, in fact, defamed. Stating generally that, at times, they felt socially awkward or odious does not, without

16

more, suggest the reputational harm necessary to make Equity's publication actionable under *Skillstorm*. Accordingly, the Court grants Equity's Motion to Dismiss the defamation claim because Equity's publication is not an actionable statement.

D. Declaratory Judgment

The Court denies the Blagogees' request for declaratory relief because the Blagogees allege that their rights have already been violated and, thus, present a controversy too ripe for declaratory relief. The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." FED. R. CIV. P. 57. Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (1993). Declaratory relief is awarded if the relief sought (1) will serve a useful purpose in clarifying and settling the legal relations in issue and (2) will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. *Dourous v. State Farm Fire and Cas. Co.*, 508 F. Supp. 2d 479, 482 (E.D. Va. 2007) (internal citation omitted). Thus, declaratory judgments are untimely if the questionable conduct "has already occurred or damages have already accrued." *See The*

*Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 614 (E.D. Va. 2008) (denying declaratory relief as untimely because plaintiff had since filed a suit for actual relief, and thus the District Court could offer no guidance to steer plaintiff away from bringing suit).

In their FDCPA claim, the Blagogees allege damages resulting from Equity's alleged violation of the FDCPA. (Am. Compl. ¶¶ 50, 55.) Additionally, the Blagogees allege that defamatory conduct has already resulted from Equity's foreclosure sale notice in the Washington Post. (Am. Compl. ¶¶ 53-54.) Accordingly, declaratory relief is not proper here because the questionable conduct has already occurred, damages have accrued, and the Blagogees' have since filed this suit for actual relief. The Court, therefore, grants Equity's Motion to Dismiss because declaratory relief is untimely.

## IV. CONCLUSION

The Court grants Equity's Motion to Dismiss as to all Counts of the Amended Complaint. The Court grants Equity's Motion as to Counts I, II, IV, V, VII, VIII, and IX, because the express language of the allegations in those Counts is directed at Wilshire, and does not apply to Equity. The Court concludes that res judicata does not bar the Blagogees' FDCPA or defamation claims but, nonetheless, grants Equity's Motion as to

Count III (violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (2000)) because the Blagogees fail to sufficiently allege that Equity is a debt collector within the meaning of the FDCPA. The Court also grants Equity's Motion as to Count VI (defamation) because the Amended Complaint fails to set forth sufficient facts to establish that Equity's posting of a foreclosure sale notice in the Washington Post tarnished the Blagogees' reputation in their community. Finally, the Court grants Equity's Motion as to Count X (declaratory judgment) because such relief is untimely. Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss Amended Complaint is GRANTED.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel.

Entered this 26th day of July, 2010.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia